IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MONIK J. JOHNSON, | : | Civ. No. 1:23-CV-00017 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Magistrate Judge Bloom) |
| | : | |
| YORK ACADEMY REGIONAL | : | |
| CHARTER SCHOOL, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

I. <u>Introduction</u>

This case comes before us on a renewed motion to dismiss filed by the defendant, York Academy Regional Charter School ("York Academy"). (Doc. 22). The plaintiff, Monik Johnson, is a former employee of York Academy who brought this lawsuit alleging claims of religious discrimination, retaliation, and constructive discharge pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.* (Docs. 1, 11).

The defendant has moved to dismiss Johnson's amended complaint, arguing that she has failed to state a claim for discrimination and

constructive discharge under Title VII and the PHRA. (Doc. 22). This motion is fully briefed and ripe for resolution. (Docs. 23, 25, 26). For the reasons that follow, the defendant's motion will be denied.

## II. <u>Background</u>

The factual background of this Memorandum Opinion is taken from the well-pleaded facts alleged in the plaintiff's amended complaint (Doc. 11), which we must accept as true for purposes of the instant motion to dismiss. Monik Johnson was employed by York Academy from May 2011 to February 5, 2019, as a business manager. (*Id.* ¶ 9). During the school year, Ms. Johnson worked eight hours per day, Monday through Friday. (*Id.* ¶ 10). During the summer, Ms. Johnson worked ten hours per day, Monday through Thursday. (*Id.*).

In November of 2017, Johnson began to practice religious beliefs that follow a Lunar Sabbath. (Doc. 11 ¶ 11). Johnson alleges these are sincerely held religious beliefs that are rooted in certain interpretations and translations of the King James Bible. (*Id.* ¶ 12). The day the Lunar Sabbath is observed changes each month depending on when the new moon occurs. (*Id.* ¶ 11). The necessity to keep the Sabbath holy is a Commandment of Johnson's religious beliefs. (*Id.* ¶ 13).

On October 17, 2018, Johnson directed a letter to the CEO of York Academy, Dr. Dennis Baughman, asking for an accommodation to work four ten-hour workdays when her Sabbath fell on a weekday. (Doc. 11 ¶ 14). On November 26, 2018, Dr. Baughman asked Johnson to provide the following:

> (a) a signed statement from a third party to verify from personal observation or experience that her request was based on a sincerely held and consistently demonstrated belief; and
> (b) at her discretion, any literature explaining or supporting the basis for her sincerely held religious belief, practice, or observance.

(*Id.* ¶ 15). Dr. Baughman's response to Johnson's request also asked her to respond to the following:

> (a) a written statement addressing whether she would be able to provide a schedule designating her Sabbath days through the entire year;
>
> (b) her availability for consultation by phone on those days;
>
> (c) her willingness to work a regular work week if her Sabbath fell on a Saturday/Sunday; and
>
> (d) her schedule in the summer when the Defendant's staff operated on a four-day, 10-hour schedule Monday through Thursday.

(*Id.* ¶ 16).

On December 2, 2018, Johnson responded to Dr. Baughman's response. (Doc. 11 ¶ 17). Johnson's response contained a statement from a third party with personal knowledge of Johnson's need for a religious accommodation. (*Id.*). As part of her response, Johnson included a calendar to indicate her Sabbath days from December 22, 2018, to June 30, 2019. (*Id.* ¶ 18). Additionally, Johnson explained that the King James 1611 Bible with the Apocrypha is the basis for her religious belief. (*Id.* ¶ 19). Johnson further stated she would be unavailable for work-related contact on her Sabbath except for an emergency that could not go unaddressed until the next day. (*Id.* ¶ 20). She stated she would not need an accommodation if her Sabbath was on a Saturday or Sunday. (*Id.* ¶ 21). Johnson further indicated she would be willing to work on a Friday during the summer, in person or from home, if her Sabbath fell on a weekday. (*Id.* ¶ 22).

In the beginning of January 2019, Johnson initiated a follow-up conversation with Dr. Baughmen. (Doc. 11 ¶ 23). Johnson alleges that Dr. Baughmen informed her that the Board of Directors was "really digging its heels in on this one." (*Id.*). Johnson started to experience anxiety after she had not received a decision regarding her

accommodation request. (*Id.* ¶ 24). Johnson consulted her doctor regarding her symptoms and a treatment plan. (*Id.* ¶ 24). She explained to her doctor that she was experiencing stress due to working on her Sabbath and the fact that three months had passed without receiving a response from the Board about her accommodation request. (*Id.* ¶ 25). Following her doctor's recommendation, Johnson requested and was granted permission for leave from work for one week. (*Id.* ¶ 26).

While on leave, Dr. Baughman called and asked about her condition and when she would be returning to work. (*Id.* ¶ 27). Johnson told Dr. Baughmen that the Board's delayed response to her requested accommodation heightened her anxiety. (*Id.* ¶ 28). She also explained that she would be applying for FMLA leave and would return to work on February 5, 2019. (*Id.* ¶ 29).

When Johnson returned to work on February 5, 2019, she attended a meeting with Dr. Baughman and the President of the Board, Nancy Ahalt. (Doc. 11 ¶ 30). Dr. Ahalt provided Johnson with the Board of Directors' January 31, 2019 letter denying her accommodation request. (*Id.* ¶ 31). In the letter, the Board stated that Johnson's requested absences would present an undue hardship. (*Id.* ¶ 32). In her complaint,

Johnson explains that in denying her request, the Board did not call into question the sincerity of her religious beliefs. (*Id.* ¶ 33). Additionally, the letter stated that its members could not agree on a reasonable accommodation that would address Johnson's religious needs. (*Id.* ¶ 34). Johnson further asserts that:

> 35. The Board's letter opined that an undue hardship was created as the result of the following:  Ms. Johnson's critical responsibilities in handling timesensitive payroll, human resources issues/concerns, presentation of financial reports, managing audit visits, Ms. Johnson's required presence at Board meetings, handling vendor issues, and assurance of payments to creditors."
>
> 36. Although Ms. Johnson exhausted all of her options to remain employed, the Board never specified any financial or other compelling reason why Ms. Johnson's religious belief could not be accommodated."
>
> 37. Defendant's unsubstantiated claim of undue hardship was further undermined by:   (a) its CEO's customary ability to seek the advice of Ms. Johnson's Business Manager Assistant during her absences;   (b) Ms. Johnson's confirmation that she would be available on her Sabbath to address any emergencies; and   (c) Ms. Johnson's satisfying her job requirement by working at least 40 hours per week.

(*Id.* ¶ 35-37).

In the meeting between Johnson, Dr. Baughman, and Dr. Ahalt, Johnson alleges that Dr. Baughman did not provide a suggested accommodation and Dr. Ahalt did not present any alternatives discussed

by the Board. (Doc. 11 ¶ 38). Additionally, Johnson alleges that Dr.
Baughman asserted that himself and the Board would be open to
alternative options, to which Johnson replied, "I can't work on my
Sabbath day. I'm not sure what the alternative could be." (*Id.* ¶ 40). In
response, Johnson alleges that Dr. Baughman and Dr. Ahalt "nodded in
agreement and ended the meeting, forcing Ms. Johnson to make a
Hobson's choice between ending her employment or working under
intolerable conditions which violated her fundamental religious beliefs."
(*Id.* ¶ 41).

Following the meeting, Johnson broke down, cried, and had an
anxiety attack. (Doc. 11 ¶ 42). Then Johnson informed Dr. Baughman
that she needed to leave work to see her physician for anxiety. (*Id.*)
Johnson alleges that "after Defendant refused to accommodate her
sincerely held religious belief, [she] had no alternative but to resign from
employment." (*Id.* ¶ 43).

On February 6, 2019, the day after the meeting between Johnson,
Dr. Baughman, and Dr. Ahalt, Johnson placed a letter under Dr. Ahalt's
door, which rebutted the statements in the Board's letter refusing her

accommodation request. (Doc. 11 ¶ 44). This letter also notified York Academy of her immediate resignation. (*Id.* ¶ 45).

It is against this factual backdrop that Johnson filed the instant action on January 5, 2023. (Doc. 1). Thereafter, York Academy filed a motion to dismiss, and Johnson filed an amended complaint. (Docs. 7, 11). In her amended complaint, Johnson alleges that York Academy failed to accommodate her religious beliefs in violation Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA") (Counts 1 and 3). (Doc. 11 ¶¶ 55-58, 66-69). Also, Johnson alleges that she was constructively discharged in retaliation for seeking an accommodation for her religious beliefs in violation of Title VII and the PHRA. (*Id.* ¶¶ 59-65, 70-73).

York Academy moved to dismiss this amended complaint. (Doc. 13). On May 31, 2023, the court entered an order dismissing York Academy's motion to dismiss without prejudice in light of the Supreme Court's decision in *Groff v. Dejoy*, 143 S. Ct. 2279 (2023). (Doc. 21). The court directed the parties to reexamine the instant case considering the intervening guidance handed down from the Supreme Court in *Groff*, which held that an employer defending against a *prima facie* case of a

Title VII failure to accommodate claim must show an undue hardship, in that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 143 S. Ct. at 2295. (Doc. 21).

Subsequently, York Academy renewed its motion dismiss the amended complaint on July 27, 2023. (Doc. 22). York Academy asserts that Johnson's amended complaint does not state a *prima facie* case of a failure to accommodate or retaliation claim, and thus, it has no burden under *Groff* to show that accommodating Johnson would have posed an undue hardship. The motion is fully briefed and is ripe for resolution. (Docs. 23, 25, 26). For the following reasons, we will deny the defendant's motion to dismiss.

III. <u>Discussion</u>

A. <u>Motion to Dismiss - Standard of Review</u>

The defendant has filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits the court to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under federal pleading standards, a complaint must set forth a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

[A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint

has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

11

**B.** <u>The Plaintiff has Sufficiently Alleged a Claim for a Failure to Accommodate Under Title VII and the PHRA.</u>

Title VII of the Civil Rights Act of 1964 dictates that "[i]t shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C.A. § 2000e-2(a)(1). The Pennsylvania Human Relations Act ("PHRA") similarly prohibits discrimination by and employer due to an individual's religion. *See* 43 P.S. § 955(a).[1] With respect to religious practices, the Supreme Court has explained:

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual ... because of such individual's 'religious observance and practice.'"

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015) (quoting 42 U.S.C. § 2000e(j)).

---

[1] Title VII and PHRA claims are subject to the same analysis. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

Johnson has brought claims for religious discrimination due to a failure to accommodate under both Title VII and the PHRA. The Third Circuit has instructed that in order for a plaintiff to make a *prima facie* showing of religious discrimination, she "must show that [s]he: (1) holds a sincere religious belief that conflicts with a job requirement; (2) informed h[er] employer of the conflict; and (3) was disciplined for failing to comply with the conflicting job requirement." *Groff v. DeJoy*, 35 F.4th 162, 168 (3d. Cir. 2022) *remanded on other grounds* 143 S. Ct. 2279 (citing *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010)). York Academy asserts that Johnson has satisfied the first two elements of a religious discrimination claim but has not alleged facts to satisfy the third element—disciplined for failing to comply with the conflicting job requirement. (Doc. 23 at 7).

Adverse employment actions are recognized disciplinary actions if "they 'effect a material change in the terms or conditions of [the] employment.'" *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 (E.D. Pa. 2020) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001)). The Third Circuit has defined an "adverse employment action" as an action "which is 'serious and tangible enough to alter an employee's

compensation, terms, conditions, or privileges of employment.'" *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

A constructive discharge constitutes an adverse employment action. *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.32 (3d Cir. 2006) (citing *Duffy v. Paper Magic Group, Inc.,* 265 F.3d 163, 167 (3d Cir. 2001)). The Third Circuit has explained that a constructive discharge "will be found where 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Lanza v. Postmaster General of the United States*, 570 F. App'x 236, 240 (3d Cir. 2014) (quoting *Cardenas,* 269 F.3d at 263).

York Academy argues that Johnson has not alleged facts sufficient to establish she was constructively discharged. The defendant asserts that Johnson has failed to allege facts to show that she was subjected to a binary choice between working on her Sabbath and violating her religious beliefs and resigning. (Doc. 23 at 9-10).

In our view, Johnson has pleaded facts that, if accepted as true, demonstrate that she was constructively discharged because she was left

with the choice to either work on her Sabbath or resign. For example, in her amended complaint Johnson alleged:

> 39. After Ms. Johnson had an opportunity to read the Board's letter, Dr. Baughman, the CEO, stated he and the Board were open to any alternatives Ms. Johnson might have.
>
> 40. In response, Ms. Johnson stated, "I can't work on my Sabbath day. I'm not sure what the alternative could be."
>
> 41. In response, Defendant's CEO and Board President nodded in agreement and ended the meeting, forcing Ms. Johnson to make a Hobson's choice between ending her employment or working under intolerable conditions which violated her fundamental religious beliefs.

(Doc. 11 ¶¶ 39-41). Construing these allegations in a light most favorable to Johnson, we find that Johnson has sufficiently alleged she was presented with only two options—to resign or to work on her Sabbath in violation of religious beliefs. Moreover, Johnson alleges that when she expressed her limited options, Dr. Baughman and Dr. Ahalt did not disagree but rather nodded in agreement. Considering these facts, we do not agree with York Academy's assertion that "Ms. Johnson made the unilateral decision to not pursue any further avenues to reach an accommodation and voluntarily chose to resign because of her subjective belief that she could not continue her employment." (Doc. 23 at 12). Rather, it is our view that the complaint sufficiently alleges that Johnson

was left with this binary choice and as a result, was constructively discharged.

Thus, we find that the Johnson has adequately pleaded an adverse employment action and in turn has met the third element required for a *prima facie* case of discrimination for a failure to accommodate claim. As to the question of whether the alleged conditions were so intolerable a reasonable person in Johnson's position would have felt compelled to resign, we conclude that this is a fact intensive inquiry that is not amenable to resolution at the motion to dismiss stage. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 232 n.7 (3d Cir. 2006) ("It would have been inappropriate for the District Court to decide that fact-intensive question in the context of a 12(b)(6) motion. Thus, for the purpose of this opinion, we credit all allegations of Hill's complaint and accept what Hill alleges: that he was constructively discharged."). Recognizing the fact-specific nature of this claim, at the pleading stage we believe that the plaintiff has asserted sufficient well-pleaded facts for this claim to proceed forward.[2]

---

[2] The court instructed the parties to consider the implications of the Supreme Court's decision in *Groff*. The *Groff* Court held that when a plaintiff makes a *prima facie* case of religious discrimination, the burden

Accordingly, because we have concluded that the plaintiff has established a *prima facie* case of a failure to accommodate her religious beliefs and a constructive discharge, the defendant's motion to dismiss this claim will be denied.

### C. Johnson has Sufficiently Alleged Facts to State a Retaliation Claim.

Johnson also brings a claim for retaliation under Title VII and the PHRA, alleging that York Academy subjected her to a constructive discharge because she requested a religious accommodation.

In order to state a claim for retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse action. *Moore*

---

shifts to the employer to "show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 143 S. Ct. at 2295. In the instant case, the defendants have chosen to rely on their argument that the plaintiff has not set forth a *prima facie* case of discrimination and have failed to discuss the implications of *Groff* on the facts before us. Accordingly, given our finding that the plaintiff has, in fact, set forth a *prima facie* case, this claim will proceed forward, as the defendant has failed to argue that accommodating Johnson's request would impose an undue hardship.

*v. City of Phila*, 461 F.3d 331, 340-41 (3d Cir. 2006); *Edmond v. Plainfield Bd. of Education*, 171 F. Supp. 3d 293, 310 (D.N.J. 2016).

Where the alleged adverse employment action is a claim of constructive discharge, a plaintiff is required to show that her employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Burton v. Pennsylvania State Police*, 990 F. Supp. 2d 478, 514 (M.D. Pa. 2014) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)) (quotations omitted). Factors to consider include whether the employer threatened the employee with discharge or encouraged her to resign, among others. *See Colwell v. Rite Aid Corp.*, 602 F.3d 495, 503 (3d Cir. 2010). The inquiry is an objective one; that is, we must ask "whether 'the conduct complained of would have the foreseeable result.'" *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984)).

In the instant case, we conclude that Johnson has sufficiently alleged facts to support a claim for a retaliatory constructive discharge. Here, the defendants only assert that Johnson has not shown that she

was constructively discharged. However, as we have explained, Johnson asserts in her amended complaint that she met with Dr. Baughman and Dr. Ahalt to discuss her options—which were to either work on her Sabbath in violation of her beliefs or resign. After presenting these as her only two options, Johnson alleges that Dr. Baughman and Dr Ahalt nodded in agreement and ended the meeting. Johnson resigned her position the next day. Accordingly, we find that at the pleading stage, where we must accept these allegations as true, Johnson has sufficiently stated a claim for constructive discharge under Title VII and the PHRA.

## III.   Conclusion

For the foregoing reasons, the Defendant's motion to dismiss (Doc. 22) will be DENIED.

An appropriate order follows.


*S/ Daryl F. Bloom*
Daryl F. Bloom
United States Magistrate Judge