IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONIK J. JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>YORK ACADEMY REGIONAL CHARTER SCHOOL,<br><br>Defendant. | : Civ. No. 1:23-CV-00017<br>:<br>:<br>:<br>: (Chief Magistrate Judge Bloom)<br>:<br>:<br>:<br>:<br>: |

# MEMORANDUM OPINION

## I. Introduction

This case comes before us on a motion for summary judgment filed by the defendant, York Academy Regional Charter School ("York Academy").[1] Monik Johnson, a former employee of York Academy, brought suit against the defendant alleging claims of religious discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq.[2]

[1] Doc. 73.
[2] Docs. 1, 11.

York Academy moves for entry of summary judgment on Johnson's claims, arguing that she failed to show evidence of a constructive discharge to support a prima facie case of religious discrimination and retaliation under Title VII and the PHRA.[3] York Academy also moves for summary judgment on Johnson's claim for punitive damages.[4] This motion is fully briefed and ripe for resolution.[5] For the reasons that follow, the defendant's motion will be denied.

## II. Background

Monik Johnson was employed by York Academy from May 2011 to February 5, 2019, as a business manager.[6] During the school year, Johnson worked eight hours per day, Monday through Friday.[7] During the summer, Johnson worked ten hours per day, Monday through Thursday.[8]

---

[3] Docs. 73, 74, 82.
[4] *Id.*
[5] Docs. 74, 75, 78, 79, 82.
[6] Doc. 11 ¶ 9.
[7] *Id.* ¶ 10.
[8] *Id.*

In November of 2017, Johnson began to practice religious beliefs that observe a Lunar Sabbath.[9] The day the Lunar Sabbath is observed changes each month depending on when the new moon occurs.[10]

On October 17, 2018, Johnson directed a letter to the CEO of York Academy, Dr. Dennis Baughman, requesting an accommodation to work four ten-hour workdays when her Sabbath fell on a weekday and attached the Equal Employment Opportunity Commission's ("EEOC") guidance on the law's prohibition on religious discrimination to her request.[11] On November 26, 2018, Dr. Baughman asked Johnson to provide third-party verification of her sincerely held belief and "at her discretion, any literature explaining or supporting the basis for her sincerely held religious belief, practice, or observance."[12]

Dr. Baughman's response to Johnson's request also asked her to respond to the following:

(a) a written statement addressing whether she would be able to provide a schedule designating her Sabbath days through the entire year;

[9] *Id.* ¶ 11.
[10] *Id.*
[11] Doc. 78-4 at 63–65
[12] *Id.* at 66.

(b) her availability for consultation by phone on those days;

(c) her willingness to work a regular work week if her Sabbath fell on a Saturday/Sunday; and

(d) her schedule in the summer when the Defendant's staff operated on a four-day, 10-hour schedule Monday through Thursday.[13]

On December 2, 2018, Johnson responded to Dr. Baughman with the requested documentation and information.[14] Johnson provided that she would be unavailable for work-related contact on her Sabbath except for an emergency that could not go unaddressed until the next day.[15] She stated she would not need an accommodation if her Sabbath was on a Saturday or Sunday. Johnson further indicated she would be willing to work on a Friday during the summer, in person or from home, if her Sabbath fell on a weekday.[16]

On January 15, 2019, Dr. Baughman prepared a memorandum to York Academy's Board of Trustees regarding "what impact [Johnson's] responsibilities would have not being in the school one day a week to

---

[13] *Id.* at 67.
[14] *Id.* at 68.
[15] *Id.*
[16] *Id.*

address the Sabbath issue."[17] Dr. Baughman was responsible for making recommendations to the Board for their ultimate decision[18] and concluded that Johnson's accommodation "would be extremely difficult to manage. . . ."[19] Dr. Baughman's memorandum did not include that:

- Johnson would be available on the Sabbath for emergencies;
- Johnson would continue to work 40 hours a week, within four days as opposed to five days; and
- Johnson would not require an accommodation when the Lunar Sabbath fell on a weekend.[20]

On February 5, 2019, Johnson attended a meeting with Dr. Baughman and the President of the Board, Nancy Ahalt.[21] Dr. Ahalt provided Johnson with the Board's January 31, 2019 letter denying her accommodation request.[22] In the letter, the Board stated that Johnson's requested absences would present an undue hardship.[23] In denying

---

[17] *Id.* at 14.
[18] *Id.* at 10.
[19] *Id.* at 79–80; Doc. 78-1 at 31. A copy of the memorandum also contains two handwritten notes by Dr. Baughman: "permanent??" and "can she defend this" although there is no indication when they were written. *See* Doc. 78-1 at 15.
[20] Doc. 78-4 at 14–15, 63, 79–80.
[21] Doc. 11 ¶ 30.
[22] *Id.* ¶ 31.
[23] Doc. 78-4 at 88–89.

Johnson's request, the letter stated that York Academy "did not wish to lose [Johnson] as an employee" and the Board was willing to consider other reasonable accommodations, but its members could not agree on a reasonable accommodation that would address Johnson's religious needs.[24]

At the meeting, Dr. Baughman asserted that he and the Board would be open to alternative options, to which Johnson replied, "I can't work on my Sabbath day. I'm not sure what the alternative could be."[25] It is undisputed that Dr. Baughman and Dr. Ahalt nodded in agreement and ended the meeting.[26]

Johnson alleges that "after Defendant refused to accommodate her sincerely held religious belief, [she] had no alternative but to resign from employment."[27] On February 6, 2019, the day after the meeting between Johnson, Dr. Baughman, and Dr. Ahalt, Johnson placed a letter under Dr. Ahalt's door, which rebutted the reasons the Board denied her

---

[24] *Id.*
[25] Doc. 78-2 at 6–7
[26] *Id.* at 7.
[27] Doc. 11 ¶ 43.

accommodation request.[28] This letter also notified York Academy of her immediate resignation.[29]

It is against this factual backdrop that Johnson filed the instant action on January 5, 2023.[30] Thereafter, York Academy filed a motion to dismiss, and Johnson filed an amended complaint.[31] In her amended complaint, Johnson alleges that York Academy failed to accommodate her religious beliefs in violation Title VII and the PHRA.[32] Johnson also alleges that she was constructively discharged in retaliation for seeking an accommodation for her religious beliefs in violation of Title VII and the PHRA.[33] After taking all well-pleaded facts alleged in Johnson's amended complaint as true, this court denied York Academy's renewed motion to dismiss.[34]

York Academy now moves for judgment in its favor, contending that Johnson cannot establish her claims for religious discrimination and retaliation as a matter of law because there is no evidence of an adverse

---

[28] Docs. 11 ¶ 44; 78-4 at 90–92.
[29] Doc. 78-4 at 92.
[30] Doc. 1.
[31] Docs. 7, 11.
[32] Doc. 11 ¶¶ 55–58, 66–69.
[33] *Id.* ¶¶ 59-65, 70–73.
[34] Doc. 27; *See* Doc. 22.

employment action based on constructive discharge. York Academy also seeks judgment in its favor on Johnson's claim for punitive damages under Title VII. After consideration of the record, we conclude that there are genuine issues of material fact that preclude summary judgment. Accordingly, we will deny York Academy's motion.

## III. Discussion

### A. Motion for Summary Judgment – Standard of Review

York Academy has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[35] The materiality of the facts will depend on the substantive law.[36] Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment.[37] A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party.[38]

[35] Fed. R. Civ. P. 56(a).
[36] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
[37] *Id.*
[38] *Id.*

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record.[39] If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor.[40] However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[41] A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party."[42]

B. <u>Religious Discrimination</u>

Title VII of the Civil Rights Act of 1964 dictates that "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .

---

39 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
40 *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007).
41 *Anderson*, 477 U.S. at 249–50 (citations omitted).
42 *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

religion."[43] The PHRA likewise prohibits discrimination by an employer due to an individual's religion.[44] Accordingly, the EEOC's regulations and guidance obligate employers to "reasonably accommodate" an employee's "religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."[45]

"[A]n employer has met its obligation [under Title VII] when it demonstrates that it has offered a reasonable accommodation to the employee."[46] The Supreme Court has instructed "that a reasonable accommodation is one that 'eliminates the conflict between employment

---

[43] 42 U.S.C.A. § 2000e-2(a)(1) (1970 ed., Supp. II); *see Groff v. DeJoy*, 600 U.S. 447, 471 (2023) (defining the test for "undue hardship" as "whether a hardship would be substantial in the context of an employer's business in the common-sense manner.").

[44] *See* 43 P.S. § 955(a).

[45] 42 U.S.C. § 2000e(j).

[46] *EEOC. v. Aldi, Inc.*, Civ. A. No. 06-1210, 2008 WL 859249, at *7 (W.D. Pa. Mar. 28, 2008) (not precedential) (quoting *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)); *see Shelton v. University of Medicine & Dentistry of New Jersey*, 223 F.3d 220, 225 (3d Cir. 2000) ("[T]he employer satisfies its Title VII religious accommodation obligation when it offers any reasonable accommodation.").

requirements and religious practices.'"[47] That said, "a sufficient religious accommodation need not be the 'most' reasonable one (in the employee's view), it need not be the one that the employee suggests or prefers, and it need not be the one that least burdens the employee."[48] "Simply put, when the employer offers any reasonable accommodation, the statutory inquiry is at an end."[49]

Further, the Supreme Court has recognized that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business."[50] Once an employer initiates discussions with the employee and proposes an accommodation, the employee "ha[s] a duty to cooperate in determining whether the proposal [is] a reasonable one."[51]

---

[47] *Shepherd v. Gannondale*, No. 1:14-CV-8, 2014 WL 7338714, at *20 (W.D. Pa. Dec. 22, 2014) (not precedential) (quoting *Philbrook*, 479 U.S. at 70).

[48] *Miller v. Port Auth. of New York & New Jersey* (*Miller II*), 788 F. App'x 886, 889 (3d Cir. 2019), *aff'g* 351 F. Supp. 3d 762, 779 (D.N.J. 2018) (not precedential) (quoting *Shelton*, 223 F.3d at 225 (citing *Philbrook*, 479 U.S. at 68-69).

[49] *Miller II*, 788 F. App'x at 889 (citing *Shelton,* 223 F.3d at 226).

[50] *Philbrook*, 479 U.S. at 69 (quoting *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 145–146 (5th Cir. 1982))).

[51] *Winans v. Cox Auto., Inc.*, No. CV 22-3826, 2023 WL 4353149, at *3–4 (E.D. Pa. July 5, 2023) (not precedential) (quoting *Shelton*, 223 F.3d at 227 (citing *Philbrook*, 479 U.S. at 68–69)); *see Beadle v. Hillsborough*

If "an employee refuses to attempt to accommodate her own beliefs or to cooperate with [her] employer's attempt to reach a reasonable accommodation, [she] may render accommodation impossible."[52] "Opting to file suit instead of participating with one's employer in the interactive process of determining appropriate accommodations is a failure of good faith on the part of the employee and precludes recovery for the alleged adverse employment action."[53]

Nonetheless, because "[t]he statutory burden to accommodate rests with the employer," the employer must first attempt to provide an accommodation before the "employee's duty to make a good faith attempt to satisfy his needs through means offered by the employer" becomes relevant."[54] "Title VII requires that an employer reasonably

---

*Cnty. Sheriff's Dep't*, 29 F.3d 589, 593 (11th Cir. 1994) (stating that employee has "duty to make a good faith attempt to accommodate his religious needs through means offered by the employer").

[52] *Miller v. Port Auth. of New York & New Jersey* (*Miller I*), 351 F. Supp. 3d at 779 (quoting *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977)).

[53] *Kosmac v. Nat'l R.R. Passenger Corp.*, No. CV 22-1480, 2024 WL 4252055, at *9 (W.D. Pa. Sept. 20, 2024) (not precedential).

[54] *Cain v. Hyatt*, 734 F. Supp. 671, 684 (E.D. Pa. 1990) (internal quotation marks omitted) (quoting *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1488–89 (10th Cir. 1989)) (citing *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir. 1978)).

accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations."[55] An employer may not merely conclude that an employee's request for accommodation would constitute an undue hardship; instead, "[c]onsideration of other options . . . would also be necessary."[56]

1. Johnson's Failure to Accommodate Claim

To enforce the protections of Title VII and the PHRA, a plaintiff may bring a claim for religious discrimination for an employer's failure to reasonably accommodate her religious beliefs. A plaintiff must make a prima facie showing that she "(1) holds a sincere religious belief that conflicts with a job requirement; (2) informed [her] employer of the conflict; and (3) was disciplined for failing to comply with the conflicting job requirement."[57] As to the third element, discipline requires the

---

[55] *Groff v. DeJoy*, 600 U.S 447, 473 (2023).
[56] *Id.*
[57] *Groff v. DeJoy*, 35 F.4th 162, 168 (3d. Cir. 2022) *remanded on other grounds* 600 U.S 447 (citing *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010)); *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 318 (3d Cir. 2008) ("PHRA and Title VII claims should be analyzed under the same legal standard[.]").

employee suffer adverse employment action that "'effect[s] a material change in the terms or conditions of [the] employment.'"[58]

Once a plaintiff establishes a prima facie case of discrimination, "the burden shifts to the employer to show that it made good faith efforts to accommodate, or that the requested accommodation would work an undue hardship."[59] "An employer's good faith effort to identify and provide an accommodation provides a complete statutory defense to damages."[60]

Johnson asserts a claim for religious discrimination and retaliation under both Title VII and the PHRA based on a theory of failure to accommodate and constructive discharge.[61] York Academy contends that Johnson cannot establish she was constructively discharged because Johnson was not compelled to resign, as York Academy offered "verbal and written invitation to continue discussions . . . to reach a resolution"

---

[58] *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 (E.D. Pa. 2020) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir. 2001)).
[59] *Shelton*, 223 F.3d at 224; *see Groff*, 600 U.S. at 468 (recognizing "undue hardship" as "what an employer must prove to defend a denial of a religious accommodation.").
[60] *Hofacker v. Wells Fargo Bank Nat'l Ass'n*, 179 F. Supp. 3d 463, 472 (E.D. Pa. 2016) (not precedential).
[61] Doc. 11.

and Johnson "made the unilateral decision not to pursue any further avenues to reach an accommodation."[62] This appears to be a failure to cooperate argument cast as a failure to show adverse action.

Courts have routinely rejected arguments that an employee failed to cooperate where the employer's initial obligation to offer an accommodation was never fulfilled.[63] For example, in *Aldi*, a cashier requested off to observe the Sabbath and the grocery store relied on its existing neutral rotation system and shift swap policy as an accommodation.[64] Denying the store's summary judgment motion, this court held the cashier's duty to cooperate was not triggered because a jury could find the store never fulfilled its threshold duty to offer a reasonable accommodation, "insofar as it took action in response to her religious beliefs which conflicted with her employment requirements and

---

[62] Doc. 82 at 7–8.
[63] *See Shepherd*, 2014 WL 7338714, at *19 (rejecting that the employee failed to consider alternative accommodations where the employer offered no accommodations because the employee's duty to cooperate arises only after the employer suggests a possible accommodation); *See also Winans*, No. 22-3826, 2023 WL 4353149, at *3–4 (holding, at the pleading stage, that the employee's duty to cooperate was not triggered where the complaint alleged the employer failed to engage in productive discussions or provide any accommodation).
[64] *Aldi*, 2008 WL 859249, at *1, *8–9.

the purported accommodation failed to address the full extent of her religious beliefs."[65]

Here, York Academy asserts that it invited Johnson "to continue discussions in an effort to reach a resolution" and Johnson "voluntarily chose to resign because of her subjective belief that she could not continue her employment.[66] While bilateral cooperation is integral to resolving religious conflict, an invitation for the employee to propose an alternative is not itself an accommodation. If no reasonable alternative is proposed, Johnson still effectively faced the option to work with the remaining religious conflict or to leave. In a similar vein, Johnson's unwillingness to remain working while still subject to religious conflict is not equivalent to an employee's unwillingness to pursue an employer's proposed alternative which resolves the conflict.[67] Because York Academy's mere invitation to Johnson to propose another accommodation cannot be

[65] *Id.* at *14.
[66] Doc. 82 at 7–8.
[67] *Cf. Shelton*, 223 F.3d at 228 (holding that an employee's unwillingness to pursue an acceptable alternative position offered by the employer, which would have resolved her religious conflict, precluded challenging the employer's efforts under Title VII).

deemed a reasonable accommodation as a matter of law, Johnson's duty to cooperate was not triggered to preclude recovery.

### 2. Johnson's Prima Facie Case

Turning to Johnson's prima facie case of religious discrimination for failure to accommodate under both Title VII and the PHRA, York Academy does not challenge the first two elements of Johnson's prima facie case of religious discrimination but contends Johnson has not satisfied the third element of adverse employment action from an alleged constructive discharge. "To establish a constructive discharge, a plaintiff must show that 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'"[68] "[A]n employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive

[68] *Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp. 3d 317, 335 (E.D. Pa. 2016) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir.1984)).

discharge[,]"[69] rather the conditions must be objectively intolerable such "that a reasonable person subject to them would resign."[70]

"[W]hether conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question left to the trier of fact."[71] Yet, this question may be resolved "as a matter of law where the plaintiff fails to present facts showing that the situation is 'sufficiently' extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job."[72] This requires consideration of a number of factors, "including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits,

---

[69] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citing *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir.1992)).
[70] *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3d Cir. 2014) (internal quotation marks omitted) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).
[71] *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (citation modified); *See Lojek v. Thomas*, 716 F.2d 675, 677, 680 (9th Cir.1983); *Spratley v. KidsPeace Corp.*, No. 5:22-CV-02411-JMG, 2023 WL 3007933, at *12 (E.D. Pa. Apr. 19, 2023) (not precedential).
[72] *Spratley*, 2023 WL 3007933, at *12 (quoting *Lane v. Wilkie*, No. 3:19-CV-1918-LAB-MSB, 2021 WL 3269661, at *5 (S.D. Cal. July 30, 2021) (not precedential)).

involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations."

No single factor is necessary or sufficient. For example, an intolerable condition may be an objectively compelled choice between one's religious belief and continued employment—even without threat of termination.[73] Indeed, the Third Circuit has characterized such a "Hobson's Choice" as "simply another species of intolerability."[74] When faced with such an ultimatum, "[t]he doctrine of constructive discharge does not require an employee who is seeking religious accommodation to either violate the tenets of his faith or suffer the indignity and emotional discomfort of awaiting his inevitable termination."[75]

Viewing all genuinely disputed material facts in the light most favorable to Johnson, a reasonable jury could find that Johnson was constructively discharged because the conditions of her employment had

---

[73] *See EEOC v. Center One, LLC*, No. 22-2943, 2024 WL 379956, at *3 (3d Cir. Feb. 1, 2024) (not precedential) (concluding that a reasonable jury could find constructive discharge despite the employer's contention that no one expressly threatened termination, where conditions effectively required the employee to choose between observing religious holidays and continued employment).
[74] *Center One*, 2024 WL 379956, at *3 n.5.
[75] *Id.* at *3.

become "intolerable." It is undisputed that York Academy did not suggest an alternative accommodation to resolve Johnson's religious conflict.[76] Instead, York Academy provided that it was "certainly willing to consider other reasonable accommodation(s)[,]" but "could not agree on or determine any other reasonable accommodation. . . ."[77]

Although York Academy stated that it "did not wish to lose [Johnson] as an employee . . .[,]" the following paragraph provides that "it has exhausted the possibility of reasonably being able to accommodate [Johnson's] request."[78] By denying Johnson's accommodation without an attempt to eliminate the existing conflict, a jury could reasonably conclude that the absence of an alternative left compliance in Johnson's violation of religious beliefs as the only option.[79] Likewise, a jury could reasonably interpret York Academy's statement as acknowledgment that Johnson's religious conflict remained and resignation was inevitable.

---

[76] Doc. 78-2 at 6 ¶ 13.
[77] Doc. 78-4 at 88–89.
[78] *Id.*
[79] Although the plaintiff's counsel cites to the deposition testimony of York Academy's designee as describing Johnson's choice as "take-it-or-leave-it," the transcript reflects that Dr. Baughman was referring to York Academy's choice after Johnson stated there was no alternative. *See* Docs. 79 at 9; 78-4 at 21–21.

In these circumstances and viewing the record in the light most favorable to Johnson, as we must, a reasonable jury could conclude that her understanding was reasonable and was not based solely on her subjective fears. Accordingly, York Academy's motion for summary judgment with regard to Johnson's failure to accommodate claim is denied.

C. <u>Retaliation – Constructive Discharge</u>

York Academy also moves for summary judgment on Johnson's retaliation claim under both Title VII and the PHRA. "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in" a Title VII 'investigation, proceeding, or hearing.'"[80] The PHRA's antiretaliation provision likewise prohibits "discrimination against an individual who . . . opposes an unlawful discriminatory practice, or who . . . assists in an inquiry involving allegations concerning an unlawful

[80] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).

discriminatory practice[,]" and is construed coextensively with Title VII.[81]

To state a claim for retaliation under Title VII, a plaintiff must show that (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between her protected activity and the adverse action.[82] York Academy again asserts that Johnson cannot support her claim of adverse employment action based on constructive discharge.[83]

In the instant case, we conclude that Johnson has sufficiently alleged facts to support a claim for a retaliatory constructive discharge. As we have explained, Johnson has presented sufficient evidence from which a reasonable jury could find that she was constructively discharged

---

[81] *Prise v. Alderwoods Grp., Inc.*, 657 F. Supp. 2d 564, 605 (W.D. Pa. 2009); *see Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir.2007); *Wilkerson*, 522 F.3d at 318; *see also* 43 Pa.C.S. § 955(d).

[82] *See Moore v. City of Phila*, 461 F.3d 331, 340–41 (3d Cir. 2006); *Edmond v. Plainfield Bd. of Education*, 171 F. Supp. 3d 293, 310 (D.N.J. 2016).

[83] We note that "[r]etaliation need not rise to the level of a constructive discharge in order to be actionable." *Prise*, 657 F. Supp. 2d at 619. Johnson's responsive briefing, however, does not contend that her amended complaint raises separate retaliation claims beyond constructive discharge. *See* Doc. 79; *See also* Doc. 66. Therefore, we only address whether Johnson can establish constructive discharge.

after she requested a reasonable accommodation for her religious beliefs. Accordingly, York Academy's motion for summary judgment as to Johnson's claim for constructive discharge under Title VII and the PHRA is denied.

D. Punitive Damages

York Academy moves for summary judgment on Johnson's claim for punitive damages.[84] Punitive damages are not available under the PHRA but may be recovered in claims under Title VII for intentional discrimination.[85] This requires a demonstration that the employer "engaged in a discriminatory practice or discriminatory practices with *malice or with reckless disregard* to the federally protected rights of the aggrieved individual."[86] Moreover, "[a]n employer can be liable for punitive damages for its employee's actions if: (1) its agent is employed in a position of managerial capacity; (2) the agent acts within the scope

[84] Docs. 73, 74.
[85] *See Johnson v. Fed. Exp. Corp.*, 996 F. Supp. 2d 302, 321 (M.D. Pa. 2014), *aff'd*, 604 F. App'x 183 (3d Cir. 2015).
[86] *Id.* (emphasis provided) (quoting 42 U.S.C. § 1981a(b)(1)).

of employment; and (3) the agent acts with malice or reckless indifference towards the federally protected rights of the plaintiff."[87]

Malice or recklessness hinges on "whether the defendant employer has knowledge that he or she may be acting in violation of federal law, not an awareness that he or she is engaging in discrimination."[88] To illustrate, the Third Circuit in *Gagliardo v. Connaught Laboratories, Inc.*, upheld a punitive damages award where the employer knew of the employee's disability and its obligations under the Americans with Disabilities Act, but refused to act on the employee's repeated accommodation requests.[89] Similarly, this court in *EEOC v. Bob Evans Farms, LLC,* held that a reasonable jury could find reckless indifference where the employer removed a pregnant employee from the scheduling

---

[87] *Medcalf v. Trs. of Univ. of Pennsylvania*, 71 F. App'x 924, 932 (3d Cir. 2003).
[88] *Id.* at 321.
[89] *Gagliardo v. Connaught Laboratories, Inc.*, 311 F.3d 565, 573 (3d Cir. 2002); *See also Lloyd v. Children's Hosp. of Philadelphia*, No. 2:19-CV-02775-JDW, 2023 WL 2940229 at *8 (E.D. Pa. Apr. 13, 2023) (upholding an award punitive damages award because a jury conclude the employer was dismissive of its known duty to investigate discrimination complaints from its failure to investigate or document its investigation if one occurred).

system, despite her request to remain available and the employer's knowledge that pregnancy discrimination was unlawful.[90]

Turning to York Academy's motion for summary judgment, viewing the evidence in the light most favorable to Johnson, a jury could find that York Academy was recklessly indifferent to Johnson's religious beliefs and failed to reasonably accommodate those beliefs "in the face of a perceived risk that its actions [would] violate federal law to be liable in punitive damages."[91] Johnson presented evidence that York Academy was aware of the religious conflict and knew that it had a duty to reasonably accommodate Johnson's religious beliefs—as evidenced by York Academy's own admission[92] and the fact that Johnson provided a copy of EEOC guidance in her accommodation request.[93]

Further, a jury could find that York Academy knew religious discrimination was unlawful, yet it did not attempt to resolve the conflict in accordance with the EEOC. Rather, Dr. Baughman's memo to York Academy's Board of Trustees recommending that Johnson's

---

[90] *EEOC v. Bob Evans Farms, LLC*, 275 F. Supp. 3d 635, 668–69 (W.D. Pa. 2017).
[91] *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999).
[92] *See* Doc. 78-4 at 10.
[93] *Id.* at 63–65.

accommodation "would be extremely difficult to manage"[94] failed to include that:

- Johnson would be available on the Sabbath for emergencies;
- Johnson would continue to work 40 hours a week, within four days as opposed to five days; and
- Johnson would not require an accommodation when the Lunar Sabbath fell on a weekend.[95]

It is a disputed issue whether the Board considered this information in making their decision to deny Johnson's accommodation request. When requested to identify "all Documents relating to their supporting rationales, recommendations, alternatives, and decisions[,]" York Academy identified the "Memorandum provided by Dennis Baughman to York Academy's Board of Trustees" and the letter denying Johnson's accommodation.[96] A jury could reasonably find that York Academy did not properly consider Johnson's requested accommodation

---

[94] Doc. 78-4 at 79–80. We again note that a copy of this memorandum also contained a handwritten note by Dr. Baughman that states "can she defend this"—which the jury may reasonably find is in reference to Johnson. *See* Docs. 78-1 at 31, 78-4 at 15.
[95] *Id.* at 14–15, 63, 79–80.
[96] *Id.* at 82–83.

and that York Academy acted with reckless disregard to Johnson's rights under Title VII.

Finally, "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII."[97] While the Third Circuit has not determined whether the good faith defense is an affirmative defense, its model jury instructions treat it as one and the general consensus across Pennsylvania district courts is that good faith compliance is an affirmative defense which the defendant bears the burden to prove.[98] York Academy, however, does not argue good faith compliance with Title VII, and therefore, we decline to address this issue at this time.

In sum, a rational jury could find that Dr. Baughman and the Board were aware of Title VII and EEOC guidance and were indifferent to Johnson's federal rights to support punitive damages. Accordingly, York Academy's motion for summary judgment as to Johnson's claim for punitive damages is denied.

---

[97] *Kolstad*, 527 U.S. at 546 (citation modified).
[98] *See Middlebrooks v. Teva Pharms. USA, Inc.*, No. CV 17-412, 2019 WL 438092, at *15 (E.D. Pa. Feb. 4, 2019).

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment will be DENIED.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: September 23, 2026